# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| ARTHRITIS TREATMENT OF TEXAS, PLLC | § § § § | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 3:16-CV-3470-S |
| | § § | |
| ALEX M. AZAR II, Secretary, UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES | § § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant's Motion to Dismiss [ECF No. 38]. For the reasons set forth below, the Motion is granted.

### I. BACKGROUND

Pursuant to Special Order 3-318, this case was transferred from the docket of Judge Sidney A. Fitzwater to the docket of this Court on March 8, 2018.

The instant lawsuit arises out of a disputed Medicare overpayment. Medicare covers durable medical equipment furnished to beneficiaries by suppliers, such as Plaintiff Arthritis Treatment of Texas, PLLC ("Plaintiff"). Second Am. Compl. ¶ 15. Federal contractors known as Zone Program Integrity Contractors ("ZPIC"s) investigate instances of suspected Medicare fraud, waste, and abuse and identify improper payments to be collected by administrative contractors. *Id.* ¶ 16. A ZPIC makes an overpayment determination when it finds that Medicare has paid for goods supplied to a Medicare beneficiary in excess of what is allowable under the applicable statutes and regulations. Mot. to Dismiss 1-2. If a ZPIC determines that a durable medical equipment supplier was overpaid, the supplier can appeal that determination. Second Am. Compl.

¶ 17. Federal regulations establish a four-part administrative appeal process. Mot. to Dismiss 2-3.

First, a dissatisfied supplier may request a redetermination by a contractor. Second Am. Compl. ¶ 17. If the supplier is dissatisfied with the redetermination decision, it may request a reconsideration by a different contractor, known as a Qualified Independent Contractor ("QIC"). *Id.* If the supplier is dissatisfied with the reconsideration decision, it may request an Administrative Law Judge ("ALJ") hearing.[1] *Id.* ¶ 18. Finally, the supplier may request review of the ALJ's decision by the Medicare Appeals Council (the "Council"). *Id.* The Council's decision is considered the final agency action for purposes of judicial review. *Id.*

On March 29, 2016, Health Integrity, L.L.C., a ZPIC, determined that Plaintiff had been overpaid by $1,560,771.05 for Medicare claims submitted between January 1, 2014, and May 31, 2015. *Id.* ¶ 22. The ZPIC reviewed a sample of 35 claims and found an overpayment of $63,225.23. *Id.* It then extrapolated the total overpayment using statistical sampling. *Id.*

On April 6, 2016, CGS Administrators ("CGS")[2] formally notified Plaintiff of the overpayment. *Id.* ¶ 23. The notice allegedly was not accompanied by any of the statistical data used to calculate the overpayment and did not include evidence regarding the audit. *Id.* On or about April 25, 2016, Plaintiff requested a redetermination of the overpayment. *Id.* ¶ 24. In seeking redetermination, Plaintiff argued that the ZPIC had failed to adhere to statutory and regulatory guidelines and that the "Radio Estimator" methodology used to calculate the alleged

---

[1] Regardless of whether the supplier seeks ALJ review, Defendant may initiate recoupment of the alleged overpayment after the reconsideration decision is issued. Second Am. Compl. ¶ 2. To recoup the overpayment, Defendant is permitted to withhold 100% of the supplier's incoming Medicare payments. *Id.* However, Defendant is required to make a repayment plan available to the supplier when repayment poses a hardship. *Id.* ¶ 19. Hardship is deemed to exist where "the aggregate amount of the overpayment exceeds 10 percent of the amount paid . . . to the supplier . . . for the cost reporting period covered by the most recently submitted cost report." *Id.* (quoting 42 U.S.C. § 1395ddd(f)(1)(B).

[2] CGS is the federal contractor that made the payment of durable medical equipment claims at issue in this case. Second Am. Compl. ¶ 16.

overpayment was not conducted pursuant to applicable guidelines. *Id.* ¶ 25. On July 28, 2016, CGS issued an unfavorable redetermination decision sustaining the overpayment determination. *Id.* ¶ 26.

Plaintiff requested a reconsideration of CGS's decision. *Id.* On December 21, 2016, the QIC issued a reconsideration decision that was unfavorable to Plaintiff as to the 35 claims that comprised the sample. *Id.* ¶ 27. However, the QIC set aside the statistical sampling methodology used to calculate the extrapolated overpayment. *Id.* Specifically, the QIC found that (1) the sample size used by the ZPIC was not adequate to justify the demand amount; and (2) the overpayment's calculation required a more conservative extrapolation. *Id.* ¶ 28.

On May 31, 2017, CGS issued a revised demand that re-extrapolated the overpayment. *Id.* ¶ 29. CGS allegedly did not disclose the methodology it used in calculating the new demand amount. *Id.* The new overpayment amount was $1,461,961.00. *Id.* CGS advised Plaintiff that it could appeal the new amount at the ALJ level. *Id.*

Plaintiff appealed the new amount to the ALJ level and then filed suit in this Court. Plaintiff seeks a writ of mandamus compelling Defendant Alex M. Azar II, Secretary of Health and Human Services ("Defendant"), to recalculate the Medicare overpayment. *Id.* ¶¶ 30-31. Plaintiff claims that the amount should be limited to $63,225.23, "the actual amount of the overpayment." *Id.* ¶ 31. In the alternative, Plaintiff seeks a declaratory judgment in the form of a reconsideration decision that recalculates the overpayment amount and limits it to $63,225.23. *Id.* ¶ 42. Because even the lower overpayment amount is well over 10 percent of Plaintiff's prior year Medicare payments, Plaintiff also seeks a repayment plan. *Id.* ¶ 32. Finally, Plaintiff seeks a preliminary injunction preventing Defendant from initiating recoupment to collect the alleged $1,461,961 overpayment. *Id.* ¶ 43.

3

## II. LEGAL STANDARDS

### A. *Rule 12(b)(1)*

Under the Constitution, a federal court may decide only actual cases or controversies. U.S. CONST. art. III, § 2. A court properly dismisses a case where it lacks the constitutional power to decide it. *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Dismissal for lack of subject-matter jurisdiction is warranted when "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Gilbert v. Donahoe*, 751 F.3d 303, 307 (5th Cir. 2014) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)). The party asserting jurisdiction bears the burden of proving that jurisdiction exists. *Ramming*, 281 F.3d at 161. "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.*

### B. *Rule 12(b)(6)*

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual

4

inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

### III. ANALYSIS

#### A. *Subject-Matter Jurisdiction*

Under 42 U.S.C. § 405(g) and (h), federal courts only have jurisdiction over a "final decision" of the United States Department of Health and Human Services when dealing with claims "arising under" the Medicare Act.[3] *Family Rehab., Inc. v. Azar*, 886 F.3d 496, 500 (5th Cir. 2018). A supplier may receive a final decision by: (1) satisfying all four stages of administrative appeal and receiving a decision from the Council; or (2) escalating its claim to the Council and waiting 180 days for the Council to act or fail to act. *Id.* at 500-01 (citing 42 U.S.C. § 405(g), (h); 42 C.F.R. § 405.1132).

---

[3] Although § 405(g) is a provision of the Social Security Act, it has been made applicable to Medicare by 42 U.S.C. § 1395ff(b)(1)(A). *Family Rehab., Inc v. Azar*, 886 F.3d 496, 500 n.4 (5th Cir. 2018). And, § 405(h) has been made applicable to Medicare by 42 U.S.C. § 1395ii. *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 653 (5th Cir. 2012).

Despite Plaintiff's failure to obtain a final decision in the instant case, it invokes several bases for jurisdiction. First, Plaintiff contends that the Court has mandamus jurisdiction. Second, Plaintiff argues that certain exceptions to the channeling requirements of § 405 apply. Finally, Plaintiff relies on the Administrative Procedure Act ("APA").

### i. *Mandamus Jurisdiction*

The Court must determine first whether it has jurisdiction over Plaintiff's claim for mandamus relief under 28 U.S.C. § 1361. "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A writ of mandamus should issue only in "extraordinary situations." *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 402 (1976). Mandamus jurisdiction exists only if the plaintiff seeks "to compel an officer or employee of the United States or its agencies to perform an allegedly nondiscretionary duty owed to the plaintiff." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 766 (5th Cir. 2011). A writ of mandamus "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984).

The Court finds that mandamus jurisdiction does not exist in the instant case for two reasons. First, Defendant did not owe Plaintiff a clear nondiscretionary duty. Plaintiff claims that 42 U.S.C. § 1395ff(c) and the Medicare Program Integrity Manual ("MPIM") give rise to Defendant's nondiscretionary duty "to render a correct and complete reconsideration decision" and to "limit[] the overpayment amount to $63,225.23." Second Am. Compl. ¶ 31. However, neither § 1395ff(c) nor the MPIM creates such a clear nondiscretionary duty.

Plaintiff's argument regarding § 1395ff(c) is unclear. In the Second Amended Complaint, Plaintiff states that Defendant has a duty to render a complete and correct reconsideration decision. The relief Plaintiff seeks—limiting the overpayment determination to a set amount—seems to go only to the "correctness" of the decision, while § 1395ff(c) goes to its "completeness." Subsection (3)(E), which Plaintiff relies on its response brief, requires reconsideration decisions to include "a detailed explanation of the decision as well as a discussion of the pertinent facts and applicable regulations applied in making such decision." 42 U.S.C. § 1395ff(c)(3)(E). Plaintiff complains that it "has been provided with zero information on the methods Health Integrity used to revise the calculation" and seeks "to compel [Defendant and its] contractors to provide proper notice and disclosures." Resp. 11. Even if the Court were to overlook the fact that the relief sought in Plaintiff's response (provision of notice and disclosures) is not mentioned in the Second Amended Complaint, the Court finds that Plaintiff has failed to point to a clear nondiscretionary duty that Defendant did not perform.

The MPIM goes to the "correctness" of the decision. The MPIM gives a contractor three options if the decision issued on appeal contains a finding that the sampling methodology used by the contractor was invalid.[4] The contractor can revise the overpayment determination after correcting errors in the sampling methodology, elect to recover only the actual overpayment and then initiate a new review, or conduct a new review. MPIM § 8.4.9.1. Here, the contractor availed itself of the first option and corrected errors in its sampling methodology to arrive at a revised overpayment determination. While the contractor had the option to provide the relief Plaintiff seeks by selecting the second option, it did not have a clear nondiscretionary duty to do so.

---

[4] CTRS. FOR MEDICAID & MEDICAID SVCS., MEDICARE PROGRAM INTEGRITY MANUAL ch. 8, § 8.4.9.1, https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/Downloads/pim83c08.pdf [hereinafter MPIM].

7

As to Plaintiff's claim that the Court should order Defendant to offer Plaintiff a repayment plan, Plaintiff has not alleged any facts showing that it has requested a repayment plan. A supplier must request a repayment plan before Defendant's duty to provide one arises. 42 U.S.C. § 1395ddd(f)(1)(A) ("[U]pon request of the . . . supplier the Secretary shall enter into a [repayment] plan with the . . . supplier . . . ."). Thus, the Court finds that Defendant did not owe Plaintiff a duty to offer a repayment plan.

Second, the Court finds that mandamus jurisdiction is lacking because Plaintiff has not exhausted all other avenues of relief and still can avail itself of the administrative appeal process. Plaintiff argues that the administrative exhaustion requirement does not preclude mandamus jurisdiction because the exercise of such jurisdiction is necessary to "review otherwise unreviewable procedural issues." *Wolcott*, 635 F.3d at 766; *see also Family Rehab.*, 886 F.3d at 506 (rejecting notion that exhaustion is always required before courts may exercise mandamus jurisdiction). *Wolcott* is distinguishable, as it involved a Medicare provider that had obtained favorable final administrative decisions. 635 F.3d at 762. In that case, the Secretary and Medicare contractor allegedly would not make the payments mandated by those final decisions. *Id.* On those facts, the Fifth Circuit determined that the *Wolcott* provider did not "seek a redetermination of administrative decisions concerning its right to benefits, but rather the enforcement of these administrative decisions and a review of . . . otherwise unreviewable procedural issues." *Id.* at 764-65.

Here, by contrast, Plaintiff has neither obtained a final administrative decision nor offered a compelling reason why its concerns with the overpayment calculation cannot be addressed by the ALJ and, if necessary, the Council. Unlike in *Wolcott*, Plaintiff has identified no unreviewable

procedural issues, and Plaintiff must exhaust its administrative remedies before bringing suit in federal court.

For the foregoing reasons, the Court holds that it does not have mandamus jurisdiction over the instant action.

### ii. *Declaratory Judgment*

If Plaintiff's request for a writ of mandamus is denied, it requests declaratory relief in the alternative. Defendant argues that there is no federal-question jurisdiction under 28 U.S.C. § 1331 because 42 U.S.C. § 405(h) precludes such jurisdiction over all claims arising under the Medicare Act absent exhaustion of administrative appeals. A claim arises under the Medicare Act if (1) it is "inextricably intertwined" with a benefits determination; or (2) "both the standing and substantive basis for the presentation" of the claim is the Medicare Act. *Ringer*, 466 U.S. at 614-15 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 760-61 (1975)). The phrase "arising under" is construed "quite broadly" and includes not only actions seeking an award of benefits but also actions seeking declaratory and injunctive relief. *Id.* Because Plaintiff is seeking a declaratory judgment regarding how its overpayment determination should be handled, its claim arises under the Medicare Act. *Cf Tex. Med. Enters. v. Sebelius*, Civ. A. No. 9:13-CV-27, 2013 WL 3215760, at *3-*4 (E.D. Tex. June 24, 2013) (finding that provider's suit concerning repayment of overpayment was inextricably intertwined with claim for benefits and arose under Medicare). Notwithstanding the fact that Plaintiff's claims arise under the Medicare Act, Plaintiff argues that certain exceptions imbue the Court with jurisdiction.

### a. *Clandestine Agency Policy Exception*

First, Plaintiff alleges that the "clandestine agency policy exception" applies because the failure to correctly revise an overpayment demand constitutes a fixed clandestine policy. *See* Second Am. Compl. ¶ 11; *Bowen v. City of New York*, 476 U.S. 467 (1986) (explaining clandestine agency policy exception). This exception does not apply under these facts because the relevant standards and procedures are published in the United States Code and the Code of Federal Regulations, so they are not clandestine. Further, the QIC gave Plaintiff notice of its decision. Although Plaintiff takes issue with that decision, the clandestine agency policy exception does not apply where a plaintiff alleges failure to comply with applicable regulatory or statutory directives. *See, e.g., City of New York*, 476 U.S. at 484-85 (noting that jurisdiction is not available where plaintiff alleges "mere deviation from the applicable regulations" because "such individual errors are fully correctable upon subsequent administrative review"); *Home Health Innovations, Inc. v. Sebelius*, No. SA-14-CA-124, 2014 WL 12540881, at *4 (W.D. Tex. Feb. 18, 2014) (finding clandestine agency policy exception inapplicable where provider alleged only that regulations were misapplied to it).

### b. *Collateral Claim Exception*

Plaintiff also alleges that the "entirely collateral Constitutional claim" exception applies because it has asserted a Fifth Amendment due process claim. *See* Second Am. Compl. ¶12; *Mathews v. Eldridge*, 424 U.S. 319, 330-32 (1976) (outlining collateral claim exception). For a claim to be considered collateral, it must not require the Court to delve into the substance of the underlying Medicare claim, demand a determination as to the application of the Medicare Act, or "request relief that would be 'administrative,' i.e., the substantive, permanent relief that the plaintiff seeks or should seek through the agency appeals process." *Family Rehab.*, 886 F.3d at

501 (citing *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285-86 (5th Cir. 1999)). The exception does not apply if the constitutional claim is "'inextricably intertwined' with a substantive claim of administrative entitlement." *Affiliated Prof'l*, 164 F.3d at 286 (quoting *Ringer*, 466 U.S. at 611). However, if the plaintiff "asserts a collateral challenge that [cannot] be remedied after the exhaustion of administrative review," courts may deem the administrative exhaustion requirement waived. *Id.* at 285.

Here, Plaintiff's purported due process claim is inextricably intertwined with the claim for reduction of the overpayment determination. Plaintiff argues that, by refusing to enforce the partially favorable decision and by delaying notice and withholding evidence, Defendant has violated Plaintiff's right to due process. However, the relief Plaintiff seeks is administrative and effectively would increase the amount of Medicare benefits it receives by having the overpayment determination reduced to a set amount—$63,225.23. Thus, Plaintiff's constitutional claim is intertwined with its claim for benefits. *See Griego v. Leavitt*, Civ. A. No. 3:07-CV-1708-D, 2008 WL 2200052, at *10 (N.D. Tex. May 16, 2008) (holding that claim seeking prevention of recoupment of alleged overpayment was not collateral because preventing recoupment would give plaintiff "a greater entitlement to present or future Medicare benefits").

Not only has Plaintiff failed to show that its constitutional claim is separate from its claim for benefits, but also Plaintiff has failed to show that its due process claim cannot be remedied by the administrative appeals process. Plaintiff relies on *Mathews*, in which the Supreme Court found that a claim to a pre-deprivation hearing rested on the proposition that full relief could not be obtained at a post-deprivation hearing. 424 U.S. at 331. The Court held that the *Mathews* plaintiff had established a colorable constitutional claim to benefits and that an erroneous termination would not be recompensable through retroactive payments. *Id.* at 331-32. Thus, the Court

11

concluded that his constitutional challenge was "entirely collateral." *Id.* at 331. In the instant case, Plaintiff argues, "Inasmuch as no administrative appeal rights are extended to Plaintiff . . . Plaintiff's Due Process claim must be entirely collateral of any benefits claim." Resp. 13. Plaintiff provides no support for the proposition that no administrative appeal rights have been extended to it. Plaintiff can, and has, appealed the decision to the ALJ. If the ALJ's decision is unfavorable, Plaintiff can appeal it to the Council. *See, e.g., Home Health Innovations*, 2014 WL 12540881, at *4 ("[B]ecause the Regulations permit the administrative review process to resolve Plaintiff's issue, exhaustion of administrative remedies would not be futile."). Therefore, the Court finds that the collateral claim exception does not apply in this case.

### c. *No Review at All*

Plaintiff relies on *Shalala v. Illinois Council on Long Term Care, Inc.* to assert that this Court has jurisdiction because § 405 "would not simply channel review through the agency, but would mean no review at all." 529 U.S. 1, 19 (2000); Second Am. Compl. ¶ 10. In analyzing this exception, the Fifth Circuit has stated that "[c]hanneling [through the administrative process] will be required unless plaintiffs can show there is no way of having their claims reviewed, there is *complete* preclusion, or there exists a serious practical roadblock to having their claims reviewed in any capacity, administratively or judicially." *Physician Hosps. of Am.*, 691 F.3d at 655 (internal quotation marks and citations omitted). As stated above, Plaintiff can have its claim reviewed by appealing to the ALJ and, later, the Council. Plaintiff reiterates its argument that review is unavailable because the contractors did not disclose evidence necessary for a due process challenge to the extrapolated overpayment and because Plaintiff "was forced to seek ALJ review and protect its appeal rights without knowing how much of the overpayment it was contesting." Resp. 19.

However, Plaintiff has not demonstrated that it cannot raise these arguments at the ALJ level. Thus, the Court finds that the "no review at all" exception does not apply.

### d. *Administrative Procedure Act*

Finally, Plaintiff asserts that the Court has jurisdiction pursuant to the APA. Second Am. Compl. ¶ 9. However, the APA does not provide an independent grant of subject-matter jurisdiction. *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 n.13 (5th Cir. 1998) ("[T]he APA does not create an independent grant of jurisdiction to bring suit."). Where, as here, § 405(g) is the sole basis for judicial review, courts do not have jurisdiction under the APA. *Tex. Med. Enters.*, 2013 WL 3215760, at *4 (citing *Citadel Healthcare Servs., Inc. v. Sebelius*, Civ. A. No. 3:10-CV-1077-BH, 2010 WL 5101389, at *6 (N.D. Tex. Dec. 8, 2010)). Accordingly, this Court does not have jurisdiction under the APA.

### B. *Failure to State a Claim*

Because the Court does not have jurisdiction over this action, it does not reach Defendant's alternate motion to dismiss under Rule 12(b)(6).

### IV. CONCLUSION

Because the Court lacks subject-matter jurisdiction, the Court grants Defendant's Motion to Dismiss without prejudice.

**SO ORDERED.**

SIGNED December 14, 2018.

_____
**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**